IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KRYSTAL PRIDE,<br><br>    *Plaintiff*,<br><br> v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 17-3400 |

**PAPPERT, J.**                                 April 11, 2018

## MEMORANDUM

  Krystal Pride alleges that Philadelphia police officers detained her on the front porch of her home for approximately four hours before entering the house and arresting her brother Demetrius. Pride sued the City of Philadelphia, the Philadelphia Police Department, Captain Javier Rodriguez and numerous unnamed officers. Pride asserts claims against all defendants pursuant to 42 U.S.C. § 1983 for malicious prosecution and wrongful arrest (Counts I and II), unlawful seizure and wrongful arrest under Pennsylvania law (Counts III and IV) and a § 1983 *Monell* claim (Count V). (Compl., ECF No. 1.) The City and Rodriguez filed a Motion to Dismiss (ECF No. 4), to which Pride responded (ECF No. 8).

  In her Response, Pride voluntarily dismissed all claims against the Police Department, (Pl.'s Resp. in Opp. to Mot. to Dimiss at 1, ECF No. 8-1), presumably because, as the City points out in its Motion, City departments cannot be sued separately. *See* 53 P.S. § 16257; *Lee v. Abellos*, No. 13-0486, 2014 WL 7271363, at *1 n.2 (E.D. Pa. Dec. 19, 2014); *Costobile-Fulginiti v. City of Phila.*, 719 F. Supp. 2d 521, 525 (E.D. Pa. 2010). Pride also voluntarily dismissed Count I against all Defendants as

1

well as Counts III and IV against the City.  The Court now grants the City and Rodriguez's Motion as to all remaining claims but will allow Pride to amend Counts II, III, IV and V against Rodriguez and Count V against the City, consistent with this Memorandum.

I

At approximately noon on April 1, 2016, Pride was in the bathroom of her home with her four year old niece, preparing to take a shower, when she heard knocking on her front door.  (Compl. ¶¶ 10–13.)  After quickly dressing, Pride opened the door and encountered police officers looking for her younger brother Demetrius.  (*Id.* ¶ 15–17.) Pride explained that her brother did not live there, and that she did not know where he was.  (*Id.* ¶¶ 21–22.)  The officers asked Pride to step outside onto her front porch.  (*Id.* ¶ 25.)  She initially resisted, but when the officers demanded that she do so, she complied with their order and sat down on the front porch.  (*Id.* ¶¶ 24–25, 27.)

Pride asked if she could check on her niece, telling the police that she left the girl unattended in the bathroom with the shower water still running.  (*Id.* ¶ 29.)  Pride alleges the officers told her that she could not go into the house, but that she was not under arrest.  (*Id.* ¶¶ 29–30.)  A few minutes later, Pride heard her niece crying and knocking on the front door from inside the house.  (*Id.* ¶ 33.)  Pride again asked to check on her niece, but was not allowed to do so.  (*Id.* ¶¶ 35–37.)

About an hour later, four more police officers arrived at the scene.  (*Id.* ¶ 38.) Pride contends that her niece was still crying inside the home, and she asked a third time if she could go back inside the house.  (*Id.* ¶¶ 39–40.)  The police denied her request, and then asked for permission to enter her home without a search warrant.

2

(*Id.* ¶¶ 40–41.) Pride refused to give them permission, and remained seated on the front porch. (*Id.*)

Approximately two hours later, Pride informed the officers that she needed to begin getting ready for work. (*Id.* ¶ 42.) The officers still would not allow her back in the house, and she demanded to speak with a sergeant. (*Id.* ¶ 46.) At approximately 4 o'clock, the first sergeant arrived at the scene, and allegedly told Pride that "it will be a lot easier to let [the officers] inside the house." (*Id.* ¶¶ 47–48.) Pride gave the officers permission to enter, whereupon they "ransacked" the house, arrested Demetrius and "took him away." (*Id.* ¶¶ 51–52.)[1]

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[1] Aspects of Pride's Complaint are confusing, inherently contradictory, and belied by "items subject to judicial notice [and] matters of public record[.]" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). Specifically, she alleges that she did not know where her brother was (Compl. ¶¶ 21–22) but that the police subsequently found Demetrius inside the house and arrested him (*Id.* at ¶¶ 51–52). She also alleges Demetrius was never charged with any criminal offense. (*Id.* at ¶ 55.) The Complaint never attempts to reconcile these discrepancies, though they are understood a bit better when reviewing Judge Surrick's account, denying a suppression motion in Demetrius' criminal case, of what happened at Ms. Pride's house that day. *See United States v. Demetrius Pride*, No. 16–0264–002, 2016 U.S. Dist. LEXIS 138036, at *1 (E.D. Pa. Oct. 3, 2016). Demetrius subsequently pleaded guilty to one count of felon in possession of a firearm as a result of his arrest that day, and was sentenced to 25 months incarceration, three years supervised release and a $100.00 special assessment. *See* Judgment, *United States v. Pride*, No. 16-0264 (E.D. Pa. Oct. 15, 2017), ECF No. 85.

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

### III

In Count II of the Complaint, Pride alleges that all Defendants violated her Fourth Amendment rights by detaining her on her porch for approximately four hours. (Compl. ¶¶ 67–73.) The claim is dismissed against the City with prejudice because a municipality cannot be held liable under the doctrine of *respondeat superior*. *Andrews*

*v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, municipal liability under § 1983 exists only when a constitutional injury results from a city's official policy or informal custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *see also Monel v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 692 (1978) (§ 1983 only "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights."). Pride does not identify any policy or custom attributable to the City; she apparently attempts to hold the City responsible for the officers' alleged misconduct.

Pride also sues Rodriguez in both his official and individual capacities. (Compl. ¶¶ 67–73.) "Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under color of law." *Helm v. Palo*, No. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Official capacity suits, however, are just another way of pleading an action against an entity of which an officer is an agent." *Id.*; *see also Monell*, 436 U.S. at 690 n.55. Thus if "the governmental entity receives notice of the suit and an opportunity to respond to it, an official-capacity suit is, in all respects, to be treated as a suit against the government entity itself." *Id.* (citing *Graham*, 473 U.S. at 166). To the extent Pride sues Rodriguez in his official capacity, her claim is redundant of her claim against the City and is dismissed with prejudice. *See, e.g.*, *Wimbush v. City of Phila.*, No. 16-05783, 2017 WL 1355174, at *4 (E.D. Pa. Apr. 13, 2017).

To the extent Pride sues Rodriguez in his individual capacity, she must allege facts showing his personal involvement in the alleged violations of Pride's rights. *See Chimenti v. Pa. Dep't of Corrs.*, No. 15-3333, 2016 WL 1125580, at *5 (E.D. Pa. Mar. 21,

5

2016) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). Pride can allege such personal involvement under either of two theories: (1) a supervisor's personal direction or actual knowledge and acquiescence in a constitutional violation, *id.* (quoting *Evancho*, 423 F.3d at 353); or (2) that a defendant, in his role as policymaker, acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation, *Brown v. May*, No. 16-01873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017).

Pride does neither. Other than naming Rodriguez as a Defendant, Pride does not mention him again in her Complaint. She does not allege that Rodriguez was present at the scene, or that he directed or acquiesced in the violation of her Fourth Amendment rights. "Allegations of participation or actual knowledge and acquiescence…must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). She similarly fails to allege that Rodriguez was a policymaker or that he acted with deliberate indifference in establishing a policy which directly caused a violation of her constitutional rights. Count II against Rodriguez in his individual capacity is dismissed without prejudice.

IV

In Counts III and IV, Pride asserts claims against Rodriguez, again in his official and individual capacities, for false arrest and unlawful seizure under Pennsylvania state law. Claims against Rodriguez in his official capacity are "to be treated as a suit against the government entity itself." *Helm*, 2015 WL 437661 at *9 (citing *Graham*, 473 U.S. at 166). Claims against the City for false arrest and unlawful seizure under Pennsylvania law are barred by the Pennsylvania Political Subdivision Tort Claims Act

("Tort Claims Act"), 42 Pa. Cons. Stat. Ann. § 8541, *et seq*. The Tort Claims Act states that "except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee therefore or any other person." 42 Pa. Cons. Stat. § 8541. The statute immunizes local agencies, including municipalities, from tort liability. *See, e.g.*, *Lory v. City of Phila.*, 674 A.2d 673, 675 (Pa. 1996) ("The Tort Claims Act…renders the city immune from claims based on willful or malicious conduct."). An injured party may recover in limited circumstances, including where the *negligent* act of the city falls within one of eight enumerated categories of exceptions to immunity.² 52 Pa. Const. Stat. § 8542(a). Counts III and IV are intentional tort claims against the City, and are thus barred by the Tort Claims Act. *See McDonald-Witherspoon v. City of Phila.*, No. 17-1914, 2017 WL 3675408, at *10 (E.D. Pa. Aug. 25, 2017) (finding false arrest claim against City of Philadelphia barred by Tort Claims Act); *Ekwunife v. City of Phila.*, 245 F. Supp. 3d 660, 678 (E.D. Pa. Mar. 24, 2017) (same). Counts III and IV against Rodriguez in his official capacity are dismissed with prejudice.

Claims for false arrest and unlawful seizure against Rodriguez in his individual capacity must sufficiently allege his personal involvement. *See Chimenti*, 2016 WL 1125580 at *5. Pride fails to allege how Rodriguez was involved in the alleged false arrest and unlawful seizure, or how he had policymaking authority and established a policy that caused these violations. Counts III and IV against Rodriguez in his individual capacity are dismissed without prejudice.

---

² The eight exceptions are for: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. Cons. Stat. § 8542(b).

7

V

In Count V, Pride alleges that all Defendants "instituted policies and procedures within the police department" that led to the violation of constitutional rights through "failures to train and hire suitable police officers and a failure to supervise those officers." (Compl. ¶ 90–91.) The City contends that Pride's *Monell* claim fails because she has not adequately alleged a policy or custom attributable to the City, and that any claim against Rodriguez insufficiently alleges his personal involvement. (Mot. at 4–10.)

A

The Court interprets Count V against the City as a failure to train claim, which is analyzed under the standard for municipal liability set forth in *Monell*. Municipal liability under § 1983 exists only when a constitutional injury results from a city's official policy or informal custom. *See Beck*, 89 F.3d at 971 (citing *Monell*, 436 U.S. 658). A policy is made "when a decisionmaker possess[ing] final authority to establish…policy with respect to the action issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices…are so permanent and well settled as to virtually constitute law." *Id.* (citation and quotation omitted). A plaintiff "must identify a custom or policy, and specifically what that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

Failure to train claims "are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Section 1983

liability requires that the failure to train amount to "'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Pride's allegations fall well short of what is required to state a failure to train claim. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation omitted). In rare cases, deliberate indifference can be shown if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can be reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Pride has not alleged a history of similar violations nor is this a rare case in which the need for more or different training is so obvious. Moreover, she does not identify a policymaker for the City's police department, nor does she allege any facts which could allow the Court to reasonably infer that a policy existed or how such a policy caused the alleged constitutional violation. *See, e.g., Santiago v. Warminster Tp.*, 629 F.3d 121, 131–32 (3d Cir. 2010) (discussing conclusory statements unsupported by further factual content). Count V against the City is dismissed without prejudice.

B

The Court interprets Count V against Rodriguez as an attempt to hold him liable for failing, as a supervisor, to properly train non-supervisory officers. Rodriguez can bear responsibility as a supervisor if, "'with deliberate indifference to the

consequences,'" he "'established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586) (modification in original); *see also Brown*, 2017 WL 2178122, at *2. Pride must satisfy a four-part test to prevail on a failure to train theory against Rodriguez: she must identify "a supervisory policy or practice [Rodriguez] failed to employ, and then provide that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was created by the failure to implement the supervisory practice or procedure." *Id.* at 317 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Pride does not allege any facts that would support holding Rodriguez liable as a supervisory official under a failure to train theory. Count V against Rodriguez is dismissed without prejudice.

VI

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Here, Pride requests leave to amend. (Resp. at 8.) Under Federal Rule of Civil Procedure 15(a), "courts may grant…amendments 'when justice so requires.'" *Frasher v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P.

15(a)). Pride may amend her Complaint consistent with this Memorandum and its accompanying Order.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.